PUTZE *v.* SAGINAW VALLEY MUTUAL FIRE-INSURANCE CO.[1]

1. FIRE INSURANCE—PREMATURE SUIT—STATUTORY LIMITATION—PLEADING—GENERAL ISSUE.
    A defense to an action on a fire-insurance policy, that, by a condition in the policy, a claim for loss is not due until 60 days after notice, and that, by statute, suit cannot be brought until 60 days after the claim is due, is not admissible under the general issue. Cir. Ct. Rule 7.

2. SAME—NOTICE OF DEFENSE—SUFFICIENCY.
    A notice which states that suit was prematurely commenced, that plaintiff had not complied with all the conditions of the policy, and had not waited as long as the law required after the claim became due before commencing suit, is sufficiently specific to admit of the defense that, under such policy and statute, suit could not be brought until 120 days after notice of the loss.

[1] The original opinion in this case was withheld from publication pending the rehearing.

3. SAME—CLAIM FOR LOSS—WHEN SUIT MAY BE BROUGHT. ·
     The act under which a mutual fire-insurance company was
       incorporated provided that suit might be brought if payment
       of a claim was withheld more than 60 days after it became
       due.  A policy provided that a claim for loss should not
       become payable until 60 days after notice.  *Held*, that suit
       could be brought at the expiration of 60 days after notice of
       loss.[1]  HOOKER, C. J., and GRANT, J., dissenting.

Error to St. Clair; Atkinson, J.  Submitted December
7, 1900.  (Docket No. 170.)  Opinion filed July 2, 1901.
Submitted on rehearing January 31, 1902.  (Docket No.
133.)  Reargued January 14, 1903.  Former opinion re-
versed April 7, 1903.

*Assumpsit* by Gustave Putze against the Saginaw
Valley Mutual Fire-Insurance Company on a policy of
insurance.  From a judgment for plaintiff, defendant
brings error.  Affirmed.

*Humphrey & Grant* and *C. L. Collins*, for appellant.
*Avery Bros & Walsh*, for appellee.

HOOKER, J.  The plaintiff, being owner of a building
used for the purposes of a hotel and saloon by one Dwyer
and his partner, tenants of the plaintiff, procured a policy
of insurance against fire in the defendant company, dated
January 12, 1897.  In the following March, Dwyer and
partner left the premises, and by consent of the plaintiff
one Armstrong entered as tenant; and he ran the hotel and
saloon, without a license authorizing him to sell liquors,
until the premises were burned, on May 8, 1897.  On May
22, 1897, an agreement was made for an appraisal of the
property.  This was made, and it is agreed that, if the
plaintiff was entitled to recover in his action, the amount
of recovery should be $1,140.  Proofs of loss were fur-
nished to defendant on July 11, 1897, and upon July 15th
the defendant's secretary wrote to the plaintiff as follows:

---

[1] On rehearing; original decision *contra.*

"SAGINAW, E. S., MICH., 7—15—'97.
" GUSTAVE PUTZE, Esq.,
              "Port Huron, Mich.

" *Dear Sir:* I have papers purporting to be proofs of
the Dutch Farm fire loss. As they do not contain a
schedule of the dimensions and materials entering into the
buildings and additions thereto, in detail, to make them
complete, this will have to be done.

"In view, however, of the fact Armstrong, your tenant,
was arrested and convicted of carrying on a disorderly
and illegal business, upon your complaint, it seems to me
you voided your policy of insurance. Of this, however, I
am not fully advised at this time. By reference to lines
Nos. 14 and 15, 32 and 33, and 74, of your policy, you
will see there are strong conditions in the contract, which
you cannot plead ignorance of to evade responsibility in
the matter.              Respectfully yours,
                         "P. R. PROCTOR,
                              "Secretary."

On September 8th plaintiff's counsel wrote and sent to
defendant the following letter, inclosing the papers
mentioned :

              " PORT HURON, MICH., Sept. 8, 1897.
"SAGINAW VALLEY MUTUAL FIRE-INS. ASSOCIATION,
              "EDDY BLDG., Saginaw, E. S., Mich.
  " *Gentlemen:* Re your policy No. 010,775.

"In this matter we inclose you herewith the original
proofs of loss which you had returned to Mr. Putze,
together with certified plans of the building burned. You
will also find inclosed affidavits of the appraisers, A. J.
Smith and J. Pennabaker, together with itemized bill
for materials needed to rebuild the Dutch Farm hotel.
Kindly let us know as soon as possible whether or not you
will pay this loss.      Truly yours,
                  "AVERY BROS. & WALSH."

In answer the defendant's secretary wrote a letter dated
September 9, 1897, in which it was claimed that the com-
pany was misled and deceived as to the value of the
property when the policy was obtained, and that some
months before the fire its occupancy was changed, and an
unlicensed saloon was afterwards conducted, increasing
the hazard. A return of premium was offered to be

made upon demand. It was said that, under the policy, the defendant had 60 days after notice, ascertainment, estimate, and satisfactory proof of loss was received, in which to consider the question of payment. The letter invited correspondence with a view to settlement.

On November 24, 1897, this action was commenced by summons. Declaration being filed, the defendant filed a plea of the general issue, accompanied by a notice containing the following allegations:

"1. That the policy of insurance declared upon in this case is void and of no effect, in that it was obtained by plaintiff through fraud and misrepresentation:

"(a) Because the plaintiff, for the purpose of inducing defendant to issue said policy, fraudulently overestimated and stated to defendant the value of the property insured, and knowingly and willfully stated to defendant that the property was of much greater value than it really was.

"(b) Because the plaintiff, for the purpose of inducing said defendant to issue said policy, falsely and fraudulently represented and stated to defendant that the property insured was used for a hotel and regularly licensed saloon, when, as a matter of fact, it was not, at the time of issuing said policy, regularly licensed, or licensed at all, as a saloon, but, on the contrary, was used for the purpose of conducting a saloon therein without license or authority.

"2. That said policy is void and of no force and effect because, at the time that the property described in said policy was burned, the said property was being used for the purpose of illegally and wrongfully conducting a saloon therein without license or authority.

"3. That the plaintiff cannot recover in this action on said policy because there was a change in the use, occupation, and exposure of said property at the time of said fire, different from the use, occupation, and exposure of said property at the time said policy was issued, in that at the time said fire occurred said property was being used for the purpose of conducting a saloon business therein without license or authority.

"4. That the plaintiff cannot recover in this action because the hazard was increased at the time of the fire by reason of the said property being used for conducting a saloon therein without license or authority, all of which was within the knowledge and control of the plaintiff.

132 MICH.—43.

" 5. That the plaintiff cannot recover in this case because this suit was prematurely commenced, and at the time of the commencement of this suit the plaintiff had not complied with all the conditions of the law governing this policy, and had not waited as long as the law required after the claim became due before commencing this action, according to the provisions of law governing this case.

" 6. That at the time of the commencement of this action the plaintiff was not entitled to bring suit against this defendant upon the said policy under the terms and conditions on which the said policy was issued."

The act under which the defendant was organized contains the following provision:

"Suit at law may be prosecuted and maintained by any member against such corporations for claims which may have accrued, if payments are withheld more than sixty days after such claims shall have become due." 2 Comp. Laws, § 7326.

The policy contained the following provisions:

"The sum for which this company is liable, pursuant to this policy, shall be *payable* sixty days after due notice," etc.

"The loss shall not become payable until sixty days after the notice," etc.

"If this policy be made by a mutual or other company having special regulations lawfully applicable to its organization, membership, policies, or contracts of insurance, such regulations shall apply to and form a part of this policy, as the same may be written or printed upon, attached or appended hereto."

Upon the trial it was contended by the defendant that, by the terms of the policy, the plaintiff's claim was not due until the expiration of 60 days from September 9th, at which time (*i. e.*, September 9th) the proofs of loss were returned to its officers, and that, under the statute cited, action could not lawfully be commenced for 60 days more (*i. e.*, 120 days after September 9th). The circuit judge sustained this construction, but held that the defense was not admissible, under Cir. Ct. Rule 7, subdivision "*c*" of which provides that:

"Whenever it shall be claimed in defense that any written instrument set forth in the plaintiff's declaration is void or voidable, or cannot be recovered upon, by reason of any statute, or by reason of nondelivery, failure of consideration, fraud, payment, discharge, or release, the facts upon which such defense is based shall be plainly set forth in a notice added to the defendant's plea."

See, also, 3 Comp. Laws, § 10074.

He also refused to permit an amendment, inasmuch as another action might be barred under the following clause in the policy:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

Counsel for the defendant maintain that the defense was admissible under the general issue, and that in any event the notice was good, because it apprised the plaintiff of the nature of the defense, which is all that the law requires of a notice.

We are of the opinion that the learned circuit judge placed the proper construction upon the statute, and that the action would not lie until the expiration of 120 days from the time that proofs of loss were filed, as the claim was not due, according to the terms of the policy, until 60 days expired after proofs of loss were furnished.

We also think a notice necessary, and that this defense could not be made under the general issue; but we are of the opinion that this notice was sufficient, when tested by the rule that a notice is sufficiently specific when it apprises the plaintiff of the defense relied upon. *Briesenmeister* v. *Knights of Pythias*, 81 Mich. 532 (45 N. W. 977). This notice stated that the suit was prematurely commenced; that he (plaintiff) had not complied with all of the conditions of the policy, and had not waited as long as the law required after the claim became due before commencing this action, according to the law governing the

case. This was a statement of facts, and indicated an intention to rely upon the law and the policy in relation to the time when suit might be commenced.

It is contended by counsel for the plaintiff that the case of *First Baptist Church* v. *Insurance Co.*, 119 Mich. 203 (77 N. W. 702), sustains their contention as to the construction to be given the statute, viz., that it refers to the same 60 days mentioned in the policy, and it is said that such case is nearly on all fours with the present case. The policy explicitly fixes the period of 60 days after proof and appraisal as the time within which the loss shall not become due and payable, and the statute authorizes action only when payment has been withheld for more than 60 days after the loss becomes due. The case cited has not held to the contrary. In that case there was no notice of this defense, and, as we have already said, such notice was necessary. There was also a claim of waiver of that condition. The opinion does not state which ground the case turned upon. It is clear that it might have turned upon the want of notice of the defense.

It already appears that proofs of loss were furnished and received by defendant on July 11th. If it can be said that these were "satisfactory proof of loss," the 60 days began to run then. These proofs of loss seem to have complied with the requirements of the policy. An appraisal had previously been made by persons selected by the parties, and this had reached the defendant about May 22d. The defendant saw fit to claim that these proofs were not complete, because they did not contain the dimensions and materials entering into the buildings and additions in detail, and asked that these be supplied. While these were not necessary in the first instance, the defendant had a right to require them, under the terms of the policy. There was no undue delay in making such demand; the secretary having asked for this four days after he received the first proofs, *i. e.*, on July 15th. We consider the information a necessary part of the proofs of loss, when demanded seasonably, and must hold, therefore,

as did the learned circuit judge, that the proofs of loss were not complete until September 9th, and it follows that the action was prematurely commenced. *Northwestern Mut. Life-Ins. Co.* v. *Greiner*, 115 Mich. 639 (74 N. W. 187).

We have no alternative but to reverse the judgment and order a new trial. It is so ordered.

·The other Justices concurred.

### ON REHEARING.

MOORE, J. This case was heard, and an opinion filed, which is reported *supra*. Afterwards a rehearing was ordered. A reference to the opinion which was filed will make a long statement of facts unnecessary here. The question in doubt is what construction shall be given to the word " due," as used in the statute. The claim of plaintiff is stated as follows:

" The policy became 'due' as soon as completed proofs of loss were filed, but not 'payable,' under the terms of the policy, until 60 days thereafter. In the statute the word 'due' is used, and the word 'payable' is not used. We contend that the word 'due' here is used as meaning 'owing' and 'remaining unpaid;' that as soon as a sum is fixed it is 'due,' although it may not be 'payable' until later. There is a distinction between the word 'due' and the word 'payable.' 'Due' means 'owing' and 'remaining unpaid.' *Fowler* v. *Hoffman*, 31 Mich. 219; *Smalley* v. *Ashland Brown-Stone Co.*, 114 Mich. 104 (72 N. W. 29)."

On the part of the defendant it is insisted that this position is erroneous, and that the claim was not due until it was payable.

The case is not free from difficulty. Not many cases have been adjudged which aid the court in arriving at a conclusion. After the opinion was filed in the case, our attention was called for the first time to two cases to which reference will be made later.

The defendant company is organized under Act No. 78,

Pub. Acts 1883. The provision of the statute to be construed is found in section 10 of said act (2 Comp. Laws, § 7326), and reads:

"Suit at law may be prosecuted and maintained by any member against such corporations for claims which may have accrued, if payments are withheld more than sixty days after such claims shall have become due."

As early as 1849 the State of New York passed a law which had a provision essentially like the one contained in our statute. Laws. N. Y. 1849, p. 448, chap. 308. This provision was construed by the supreme court of New York in 1853 in the case of *Utica Ins. Co.* v. *American Mut. Ins. Co.*, 16 Barb. 171. In that case the statute under which the defendant company was organized provided, among other things, that "suits at law cannot be maintained by any stockholder or member of the corporation for losses until payment shall have been withheld more than two months after such loss shall have become due." Section 16, Laws 1849, p. 448, chap. 308. It was claimed, as is claimed here, that the loss did not become due until 60 days after its amount had been determined, and that suit could not be brought until two months after the expiration of the 60 days. The court said:

"That section provides that the corporation may sue its stockholders, and that 'suits at law may be prosecuted by any stockholder, against such corporation, for losses which may have accrued (if payment is withheld more than two months) in all risks after such losses shall have become due.' The word 'due' has two meanings. The one indicates a debt ascertained and fixed, though payable *in futuro;* and the other, a debt where the money has become payable, so that a suit will lie on it presently. The first objection applies whenever a sum of money is due by a certain and express agreement, as by a bond for a determinate sum, a bill, a note, or a special bargain, or rent reserved on a lease; when the quantity is fixed and specified, and does not depend on any subsequent valuation to settle it. 2 Jacob, Law Dict. 198. This is in accordance with the old maxim, '*Debitum in præsenti, solvendum in futuro.*' The amount due in this case was

settled by a resolution of the company on the 13th day of January, 1852, and the money declared to be payable in 60 days thereafter. This suit was not commenced till after the expiration of the said 60 days. This was right. It was not the intention of the act to give a further credit of 60 days after the expiration of the two months from the time when the proofs were received by the company, and the amount had been settled and allowed and fixed absolutely by the defendants. By that settlement, stated in the resolution of the 13th of January, 1852, the money became due by the true interpretation of the statute, payable in 60 days thereafter. Such, we think, is the true construction of this section."

The same question was discussed in *Allen* v. *Insurance Co.*, 19 Barb. 442, where the court used the following language:

"It was insisted upon the trial that the action had been commenced prematurely. The preliminary proofs were delivered on the 24th of July. The suit was brought on the 10th of November in the same year. By the terms of the policy, the loss was to be paid within 60 days after notice and proof thereof made by the assured in conformity to the conditions annexed to the policy. The loss became due immediately upon the happening of the fire, and would have been payable at once, but for this provision in the policy. By the 16th section of the general insurance act, under which the defendants were incorporated (Sess. Laws 1849, p. 448, chap. 308), suits at law may be prosecuted for losses if payment is withheld more than two months after such losses shall have become due. The defendants insist that the effect of this provision of the statute is to extend the credit to which they are entitled for the period of two months beyond that for which they had stipulated by the terms of their contract. But I do not so construe the statute. The loss became due when the property was destroyed, or, at any rate, when the requisite proofs were furnished. Without the statute, and had there been no stipulation in the contract to prevent it, a suit might have been commenced at once. But though due when the proofs were delivered, the statute had the effect to postpone the time of payment two months. It was then a debt, *debitum in præsenti, solvendum in futuro.* The defendants, without reference to the provision of the statute, saw fit to stipulate in their contract for a similar

credit. Had they agreed to pay in 10 or 30 days after proof of loss, they might have been sued at the expiration of this period, notwithstanding the provision of the statute. The only effect of that provision is to fix the time within which the loss should be payable when the parties have omitted to do so by the terms of their contract."

This construction of the statute of New York, given to it in two cases before our statute was adopted, should have great weight, and a majority of the court think it should obtain in this case. We are of the opinion it was not the intention of the legislature that the company should have 60 days after satisfactory proof of the loss had been received before the loss should be payable, and, in addition thereto, that 60 days must elapse after the loss became payable by the terms of the policy before suit could be brought.

It is said by counsel that the case of *Utica Ins. Co.* v. *American Mut. Ins. Co., supra,* is practically overruled by the later case of *Steen* v. *Insurance Co.,* 89 N. Y. 315 (42 Am. Rep. 297). We do not agree with this conclusion. In that case the question involved was, not that the suit was brought prematurely, but that it was brought too late. It was claimed that the suit must be brought within a year from the time of the fire, and the court held that the period of limitation did not begin to run until the loss was payable, and made use of the following language:

"The contract limits the time for bringing an action under or by virtue of the policy to a 'term of 12 months next after the loss or damage shall occur,' and declares that, 'in case any such suit or action shall be commenced * * * after the expiration of 12 months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed conclusive evidence against the validity of the claim thereby so attempted to be enforced, any statute of limitation to the contrary notwithstanding.' The validity of such a stipulation is well settled (*Wilkinson* v. *Insurance Co.,* 72 N. Y. 499 [28 Am. Rep. 166]; 2 May, Ins. § 478), and in this case the question is one of construction. What was the intention or understanding

of the parties as to the time when the limitation should begin to run? The facts are undisputed, and the defendant's contention is that the words I have quoted are to be taken literally, and that they import a contract that no action shall be commenced after the expiration of 12 months from the happening of the fire by which the property insured was damaged or destroyed. On the other hand, the plaintiff has so far succeeded upon the ground that they relate to the time when a claim or cause of action accrues on which a suit may be maintained; that no claim accrues or arises in favor of the insured upon the mere happening of the loss, nor until 60 days after the proof required by the insurers, or provided for in the policy, should have been received by them at their office in New York, and the loss satisfactorily ascertained and proved.

"These events are made conditions, and are certainly precedent to the maintenance of an action, and we are of the opinion that they cannot be disregarded in getting at the true understanding of the parties of the meaning of the clause in question. Indeed, they seem to be the governing words of the contract. They are the words of the underwriters, intended for their protection, and qualify the general obligation to make good any loss, not exceeding the sum insured, or the interest of the assured in the property, by requiring preliminary proof, and a lapse even then of a fixed period before any cause of action can accrue. Except for these provisions, a suit would have lain upon the instant of the happening of the fire, or within a reasonable time thereafter.

"Now, if we look at the clause relied upon, we find the insurers prescribing a time after which no claim shall be brought, and a declaration that it shall not be sustainable unless commenced within 'the term of 12 months,' and a greater lapse of time is made 'conclusive evidence against the validity of the claim then attempted to be enforced.' It is plain that a 'term' or period is indicated after which the insurers shall not be liable, and the implied meaning of the same words must be that within that period they are or will be liable to an action. The law, in case of breach of contract, limits the time of bringing an action to six years. The contract substitutes 12 months. If we take the appellant's construction, the term of 12 months is at once narrowed to 10 months, for 60 days, at least, must elapse after 'a loss by fire' before any suit could be brought, and the term is subjected to such additional

abatement as may be made necessary by alleged inadequacy of proof, or controversies between the insurers and the policy-holder before such loss is 'satisfactorily ascertained.' The delay incident upon such provisions is illustrated by a variety of cases heretofore considered by the courts, and, among others, *Ames* v. *Insurance Co.*, 14 N. Y. 253; *Mayor, etc., of New York* v. *Insurance Co.*, 39 N. Y. 45 (100 Am. Dec. 400); *Hay* v. *Insurance Co.*, 77 N. Y. 235 (33 Am. Rep. 607). These cases, in substance, hold that the time of limitation prescribed by such a contract does not commence running until the right to bring an action exists. Whether the delay is caused by extraneous circumstances, made effective by the insurer, as in the above cases, or by the provision of the policy giving time to the insurer before the lapse of which payment cannot be enforced, is immaterial. The delay in either case is caused by the insurer, and until, by the terms of the policy, a cause of action accrues, the period of limitation against its enforcement should not, in the absence of plain and unequivocal words requiring such a construction, be deemed to commence.

" Here, we think, the intention of the defendant was to give the insured a full period of 12 months, within any part of which he might commence his action; and having, by postponement of the time of payment, secured itself from suit, it did not intend to embrace that period within the term after the expiration of which it could not be sued. In other words, the parties cannot be presumed to have suspended the remedy and provided for the running of the period of limitation during the same time."

It will be seen this language is not inconsistent with the two cases cited, and it also disposes of the contention that to give the statute the construction we have given it will have the effect of depriving some other plaintiff of his remedy because he has not commenced his suit soon enough, though it was commenced within the time prescribed by the statute.

It is said that, as the defendant had 30 days after proofs of loss were received in which to elect whether it would repair, rebuild, or replace the property, or pay the money value thereof, until that time expired the plaintiff had no right to demand money damages, and, as this is a suit

for money damages, it could not be brought until 60 days had expired after the 30 days for election had elapsed. We do not think there is force in this contention. Under the cases which we have cited, the loss becomes ascertained when satisfactory proof of loss is filed. It may be discharged by either electing within 30 days to repair, replace, or rebuild the property, or by paying the money value within 60 days.

We think the judgment should be affirmed.

Carpenter and Montgomery, JJ., concurred with Moore, J.

Hooker, C. J. (*dissenting*).   Subdivision 1 of section 50 of the Compiled Laws of 1897 provides:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

The statute applicable to this case must be construed according to the provision of subdivision 1 of section 50, quoted.   The language of that statute is:

"Suit at law may be prosecuted and maintained by any member against such corporations for claims which may have accrued, if payments are withheld more than sixty days after such claims shall have become due."   2 Comp. Laws, § 7326.

It is said that, in one sense of the word "due," a claim is due when it accrues; but this is not the ordinary or natural sense.   We would understand that, where one performs service for another under an express or implied contract, a debt or obligation at once accrues; but no one would think of saying it was due, until, by the terms of the contract, he had a right to demand it and expect payment.   The policy in question expressly provides that the loss shall not become payable until 60 days after the notice of loss, etc., are served.   Grant that the claim accrued

when the loss occurred; it did not become due or payable, by the terms of the contract, until 60 days thereafter.

The statute itself recognizes the distinction between an accrued claim and a claim due. It authorizes a suit for a claim *accrued*, but requires that it be deferred 60 days after the *accrued* claim becomes *due*, not 60 days after the accrued claim *accrued*. In the face of this plain recognition in the statute of the difference between an accrued claim and a due claim, we should not construe the statute as though it read that suit might be brought on an accrued claim (though not due) after the expiration of 60 days after such accrued claim accrued. Such construction is equivalent to saying that suit may be brought 60 days after the loss, and therefore within a shorter period than the express contract of the parties permits, for the policy provides that the loss shall not be payable until 60 days after notice of the loss, and filing satisfactory proof of loss.

This would not be a very important question in this case, were it not for the fact that another action is barred by the stipulations of the policy. Had the action been commenced more than a year after the loss became payable by the terms of the policy, it would then become a question whether this statute would not save the case; and there would then be as strong an equity in favor of construing this law in accordance with the plain and ordinary meaning of its language as there is in this case to give to the same language a forced and unnatural meaning. No one doubts that words have different meanings, and, where it is apparent that it was so intended, an unusual meaning may be applied; but, under subdivision 1 of section 50, that can never be done when the intention is not to be discerned in the language used; and it is always dangerous to make the natural meaning yield to the exigencies of a particular case. We can see that applying the natural meaning to this statute will deprive the plaintiff of his remedy, if the defendant shall choose to make that defense. On the other hand, a different construction

may deprive another plaintiff of his remedy because he has not commenced his suit soon enough, although it was commenced within the time prescribed by the plain provisions of the law.   Neither the one consideration nor the other should have a feather's weight in determining how the rule laid down by the legislature at a time before any contract was made should be subsequently construed.

We have already held that where one assigned a policy to his wife, with the provision that, in case of her death before it came *due*, it should be payable to the heirs and assigns of the husband, and the wife died after the loss accrued through the death of the husband, but before it became payable according to its terms, the word "due" should receive the ordinary construction, and the heirs of the husband, and not those of the wife, were held entitled to the benefit.   *Northwestern Mut. Life-Ins. Co.* v. *Greiner*, 115 Mich. 641 (74 N. W. 187).   In that case we applied the law as laid down in subdivision 1, § 50, *supra*, and we have done the same in the original opinion in this case.   We have the power to give this one construction in that case, and another in this; but the presumption should be that the legislature used the words in their ordinary sense, and meant what it said.   So far as consistent, rules of construction should be adhered to, and not lightly set aside.   Our law is a complex system, at best; and there is danger of going to the extreme of sacrificing uniformity and stability in definitions and rules to the possibilities of distinctions in the interest of real or imaginary justice. The safe rule is to accord to legislatures the credit of understanding and doing what they intend, and ordinarily courts should content themselves with enforcing their mandates so far as possible, and leaving to them the responsibility of correcting their mistakes, if they make any, and of intervening miscarriages of justice.

The case of *Utica Ins. Co.* v. *American Mut. Ins. Co.*, 16 Barb. 171, is at variance with the construction given to our statute in our former opinion.   It is said that this case and another similar (see *Allen* v. *Insurance Co.*, 19

Barb. 442) placed a construction upon this statute in New York before its adoption here, and that, under a well-understood rule, Michigan adopted the construction when it adopted the law.    If this law were adopted from New York, of which I am not satisfied (and the language is not identical), it came to us without a construction by the court of last resort, and we owe this claim to the accident that unauthoritative decisions are reported in that State.    These cases do not appear to have been reviewed, but they seem to be inconsistent with the case of *Steen* v. *Insurance Co.*, 89 N. Y. 315 (42 Am. Rep. 297).    There it was held that a period of limitation did not commence to run until the loss became due and payable, notwithstanding the fact that the parties had stipulated that a right of action should be limited to 12 months next after loss or damage should occur.    But, whatever we may think of the cases in Barbour, the rule invoked is not inflexible.    On the contrary, its *binding force* has been wholly denied. See End. Interp. Stat. § 371.

It is said that the defendant may be held to have waived its statutory right by the stipulation in its policy.    Did the policy clearly show an intention to waive its right to 60 days after the maturity of a claim before action could be brought, we might find it necessary to consider the question of waiver.    But I am of the opinion that no such intention is fairly deducible from the policy.    We feel free to deal with this question upon principle and our statute, which has prescribed a rule of construction.

The judgment should be reversed, as held in our former opinion.

GRANT, J., concurred with HOOKER, C. J.