## PLASKETT *v.* BENTON-WARREN AGRICULTURAL SOCIETY.

[No. 6,534.  Filed November 23, 1909.  Petition to modify mandate denied February 16, 1910.]

1. TRIAL.—*Taking Case from Jury.—Demurrer to Evidence.—Assessment of Damages.*—It is discretionary with the trial judge, upon the filing of a demurrer to the evidence, to have the jury assess the damages conditionally, or to discharge the jury and, if the demurrer be overruled, to empanel a new jury to make such assessment, the latter course being preferable.  p 360.

2. APPEAL.—*Demurrer to Evidence.—Rulings on Sufficiency of Answer.—Harmless Error.—Briefs.—Waiver.*—Where defendant demurred to the evidence, alleged errors in overruling plaintiff's demurrer to paragraphs of answer will be considered harmless; and such alleged errors are waived by a failure to discuss them. p. 360.

3. TRIAL.—*Taking Case from Jury.—Demurrer to Evidence.—How Considered.*—On defendant's demurrer to the evidence the court must accept as true all facts favorable to the plaintiff which the evidence shows either directly or by inference, and where the evidence is in conflict that which is unfavorable to the plaintiff must be rejected.  p. 360.

4. NEGLIGENCE.—*County Fairs.—Shooting Galleries.—Free Admission of Boy Contrary to Rule Requiring Pay.*—Evidence showing that a boy twelve years old was admitted into a county fair free by the society's gateman, that the rule required boys over ten years old to pay a fee for admission, there being no evidence that the boy knew of such rule, that while standing near a shooting gallery authorized by defendant society he was killed by a gun negligently handled by a boy who was engaged in shooting, with defendant's authority, supports an action for damages by the father of such boy.  p. 361.

5. TRIAL.—*Taking Case from Jury.—Demurrer to Evidence.—New Trial.*—On the overruling of defendant's demurrer to the evidence a new trial cannot be asked or granted, the facts, except on the assessment of damages, being admitted by such demurrer.  p. 365.

6. APPEAL.—*Demurrer to Evidence.—Ordering New Trial.—Discretion.*—Where defendant's demurrer to the evidence was sustained and the plaintiff appeals, the Appellate Court's order should be for the overruling of such demurrer, if the facts warrant, and not for a new trial.  p. 365.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by Charles S. Plaskett against the Benton-Warren Agricultural Society. From a judgment for defendant, plaintiff appeals. *Reversed.*

*L. J. Coppage, W. A. Swank* and *C. E. Thompson,* for appellant.

*Daniel Fraser, Will H. Isham, Will R. Wood* and *Burke Walker,* for appellee.

Myers, C. J.—Appellant brought this action against appellee to recover damages resulting from the loss of services of his son, who was killed by a shot fired from a rifle used at a shooting gallery located upon appellee's fair grounds. The complaint was in four paragraphs, differing only as to the allegation naming the party who held the gun at the time the fatal shot was fired.

The general purport of these several paragraphs will appear from the following statement of facts: In September, 1905, appellee, a corporation, was holding one of its annual fairs on grounds controlled by it, and to which all persons, regardless of age, sex or condition, had been and were by it invited. Appellee, among other attractions, exhibitions and various amusements, had provided and authorized a shooting gallery or target range to be carried on in that part of the ground where the public was accustomed to and did on that day congregate in large numbers, without making adequate provisions for the protection of visitors from bullets, accidentally, prematurely or carelessly discharged from the guns in use at such range, and which were of a dangerous and deadly character. On September 7, 1905, and while there were from five to six thousand people on the grounds, many of whom, including appellant's son, a lad twelve years of age, were congregated about said gallery, the operator thereof, as also the appellee, permitted a boy fifteen years of age to use and shoot one of its guns, using cartridges .22 caliber in size, and having a high degree of explosive force, and momentum sufficient to penetrate the human body.

While said boy was using said gun it was prematurely and accidentally discharged, the ball thereof striking appellant's son in the forehead, producing a wound from which he died. To this complaint answers were filed and issues formed, which were submitted to a jury for trial. At the conclusion of appellant's evidence, appellee demurred thereto, on the ground that it was insufficient in law to support the issues made by the pleadings. The court sustained this demurrer and overruled appellant's motion to have the damages assessed conditionally, and judgment was rendered against appellant and in favor of appellee for costs.

The assignment of errors relates to the action of the court (1) in sustaining the demurrer of appellee to the evidence, (2) in overruling appellant's motion to have the damages assessed conditionally, and (3) in overruling appellant's demurrer to the second and third paragraphs of answer.

The second assignment relates to a matter which is entirely discretionary with the court; that is to say, the court might have the damages assessed by the jury conditionally, or the jury may be discharged, leaving the damages to be assessed by another jury should the demurrer be overruled. The latter is the better practice. *North British, etc., Ins. Co.* v. *Crutchfield* (1886), 108 Ind. 518, 530; *Lindley* v. *Kelley* (1873), 42 Ind. 294.

The third assignment is waived, and if it were not, no harm to appellant is shown to have come from the court's ruling in this particular.

The first assignment presents the only debatable question submitted for our consideration. In the case of *Scheerer* v. *Chicago, etc., R. Co.* (1895), 12 Ind. App. 157, it was held that where a demurrer to the evidence is sustained, "the court is bound to accept as true all the facts which the evidence tends to prove, and, as against the party demurring, to draw from the evidence all such reasonable inferences as a jury might draw. * * * If there is a conflict in the evidence then the court can consider only

such evidence as is favorable to the party against whom the demurrer is directed, and that which is favorable to the demurring party is deemed withdrawn." In the case of *Thomas* v. *Hoosier Stone Co.* (1895), 140 Ind. 518, it was held that "a demurrer to evidence admits all facts of which there is any evidence, and all conclusions which can be fairly and logically drawn from such facts." See, also, *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250; *Milburn* v. *Phillips* (1894), 136 Ind. 680. The rule controlling the question before us seems to be that if the evidence and the inferences which may be drawn therefrom, although weak and inconclusive, fairly tend to support every material fact of the complaint, the demurrer should be overruled. In the case of *Lindley* v. *Kelley, supra,* it is said: "No advantage can be taken of any defect in the pleading, as a reason for sustaining" such demurrer.

In support of the judgment below the appellee insists that the undisputed proof clearly establishes that appellant's son, at the time he was killed, was on the premises of the appellee as a trespasser or, at most, a licensee, and therefore appellee was under no obligation to guard him against open and obvious dangers. From the evidence it appears that on September 7, 1905, appellee had control of certain grounds near the town of Boswell, Indiana, and was holding thereon what was known as its annual fair. On the afternoon of that day the fair was attended by from five to six thousand people. On its said grounds was a race track, an amphitheater, dining hall, a floral hall, a machinery display, a merry-go-round, peanut and popcorn stands, a shooting gallery, engines and various kinds of machinery in motion, race horses and other live stock on exhibition, and places of amusement, such as shows, etc. An admission fee of twenty-five cents was charged to all persons over ten years of age, all under ten years were admitted free. The ticket sellers would exercise their judgment as to the age of children and sometimes would pass

children free who were more than ten years of age. The gatekeepers would look at a boy when he came up to the gate, and if he looked to be under ten years of age he would be admitted free. Appellant on said day was forty years of age and his son was twelve years of age. On the afternoon of said day, appellant's son, with a younger brother, went to one of the gates opening into said fair ground and was told by one of appellee's gatekeepers to go on in, and they did so. No fee was demanded of them and they paid none. After entering appellee's grounds, they went to a pop-corn and peanut stand, then to a water well maintained by appellee, thence north a short distance along a walk, within ten feet of which and on the east side thereof was located a shooting gallery operated by a licensee of appellee. This gallery was lengthwise north and south and faced the north. It was five feet wide. When appellant's son that was killed reached a point on the west side of said shooting gallery, and about six or seven feet southwest from the front thereof, he stopped, and, with a number of boys there congregated, was watching the persons there engaged in shooting at targets with guns loaded with gunpowder and leaden balls. Among those thus engaged was a boy fifteen years of age, who, while handling one of the guns there used as aforesaid, accidentally caused such gun to be discharged, the bullet therefrom striking appellant's said son in the forehead, mortally wounding him. Said gallery was located on that part of said grounds where large crowds were accustomed to congregate , and at the time of the accident it was estimated that from one hundred fifty to two hundred people were assembled along the walk and near the place occupied by the boy at the time he was killed. From the front of the gallery back for a distance of about thirty-one feet to what was known as a "splash board" a rope was stretched, otherwise this space was open. The boy who was killed attended the fair in the forenoon of the day of the

accident, and was admitted by appellee without charge. On neither of these visits was he accompanied by an older person.

From these facts the jury might readily infer that the boy was attracted and sought admission to the grounds of appellee because of the numerous attractions, exhibitions and contests it had there provided and was maintaining. It had provided amusements for the young as well as the old, and for all classes of people who might there assemble. The evident purpose of these various forms of entertainments, exhibitions and contests was to attract the people to the grounds and induce them to pay the admission fee, and by means thus derived and from privileges sold the corporation was enabled to continue its business. The value of these privileges would necessarily depend upon the number of people in attendance. Unless the appellee could induce the people generally to take an interest in its enterprise and enter its grounds, the value of the privileges would be lowered and its revenue reduced. So it was interested in keeping up an attendance, and to that end it waived the admission charge to children under ten years of age, and was not especially active in collecting admission fees from older children. While it was a rule of appellee to require an admission fee from all persons over the age of ten years, yet there is no evidence from which it may be inferred that the boy in question knew of such a rule. The presence of the boy on the grounds of appellee was not inconsistent with the business in which it was engaged; nor can it be said that he was not there as a participant in the business being transacted; nor that appellee could not have anticipated his presence as one of its patrons; nor that there was no common interest or mutual advantage.

From the facts and circumstances disclosed by the record and the principles of law governing the consideration of this case we are impressed with the belief that the jury might

have found that the boy was upon appellee's premises, when injured, not as a trespasser or as a mere licensee, but was there by its invitation, and, if so, it owed him the duty of exercising ordinary care to protect him from dangerous agencies known by it to exist and permitted on its grounds set apart for the use of the public. In the case of *Howe* v. *Ohmart* (1893), 7 Ind. App. 32, 38, this court held that "it is not necessary that the invitation should be special, or even direct. It may be implied from the circumstances and facts of the case. He who uses a building for certain business purposes must keep it in reasonably safe condition for all who visit the building for the purpose of transacting the ordinary business there, otherwise he is liable to one injured." In 2 Shearman & Redfield, Negligence (5th ed.), §686, it is said: "A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary, such use may be." In the case now being considered the evidence shows the use of firearms in the immediate presence of from one hundred and fifty to two hundred people congregated on the side of the gallery where the boy stood at the time he was shot. These people were without protection from the guns there in use, if discharged while pointing outside of the range, described to be five feet wide. Under such conditions, it would not be unreasonable to conclude that the place was unsafe and dangerous, and that it was the duty owing from appellee to the people thereabout, including the boy in question, to provide them better protection, and that there was a failure to perform that duty, by reason of which the boy was killed.

Judgment reversed and the cause remanded, with instructions to the trial court to overrule the demurrer to the evidence.

## ON PETITION TO MODIFY MANDATE.

PER CURIAM.—Appellee has filed a motion for a modification of the mandate entered by this court upon the original opinion, and that a new trial be ordered. It must be conceded that appellee's rights in this court, in this regard, must be measured by its rights in the court below.

It is well settled that had the lower court ruled correctly on appellee's demurrer to the evidence, it would not have been entitled to ask for or to be granted a new trial, since the damages were not assessed and all questions of fact, except on the assessment of damages, were foreclosed by the demurrer. *Strough* v. *Gear* (1874), 48 Ind. 100; *Ruddell* v. *Tyner* (1882), 87 Ind. 529; *Radcliff* v. *Radford* (1884), 96 Ind. 482; *Stockwell* v. *State, ex rel.* (1884), 101 Ind. 1; 2 Woollen, Trial Proc., §4154.

It is true, as appellee contends, that under the authority of §702 Burns 1908, §660 R. S. 1881, this court has frequently ordered a new trial where such new trial had not been asked for. But in all such cases it will be found that the parties in whose favor the order for a new trial was made would have been entitled to make a motion for a new trial, if the lower court had correctly ruled against them on the question presented, and if such motion for a new trial presented an intervening error such new trial could correctly be awarded. But, as we have seen in this case, a correct ruling of the lower court would have left the parties where the mandate in this case puts them, with no right to ask for or to be granted a new trial, or to introduce any evidence except upon the measure of damages. This being true, this court has no legal authority to order a new trial, and to do so would not be the exercise of a sound discretion, but the exercise of arbitrary power.

Petition to modify mandate denied.