RUBIN AND CHERRY SHOWS, INCORPORATED, *v.* DINSMORE.

[No. 13,137.  Filed December 21, 1928.  Rehearing denied February 1, 1929.  Transfer denied February 15, 1929.]

*Jackiel W. Joseph* and *Henley & Titsworth,* for appellant.

*Matson, Carter, Ross & McCord,* for appellee.

NEAL, J.—Harold Dinsmore, by his next friend, recovered judgment in the Marion Superior Court, in the sum of $4,000 for alleged injuries sustained by him on account of the negligence of the appellant. The complaint, in substance, alleges that the appellant is a foreign corporation engaged in operating shows for public entertainment, to which the public and appellee were invited upon the payment of an admission fee; that ap-

pellant provided seating capacity and accommodation to all persons entering its show by the erection of bleacher seats in numerous rows, elevated each above the previous, the bleacher seats resting upon devices which sustained the weight of people attending said show; that in September, 1923, the appellant publicly invited the appellee and the general public to witness a performance of its show, which the appellee did, after the payment of an admission fee; that appellee, upon entering said show, took a seat upon said bleachers, with a large number of other persons; that appellee carelessly and negligently permitted the bleachers to be overloaded, in that they were not constructed of sufficient strength and durability to sustain the weight of a large number of people; that by reason of the overloading of the bleachers and the negligent construction thereof, the said bleachers collapsed, thereby severely injuring Dinsmore, in that the bones of his right arm were broken, shattered and bruised and otherwise injured. Answer by general denial.

Evidence tends to prove the following facts: That, in the year 1923, the Indiana Board of Agriculture entered into a contract with Rubin and Cherry Shows, Incorporated, appellant herein, whereby said appellant agreed to present its attraction on the Indiana State Fair Grounds from September 3 to 8. Appellant, by the terms of said contract, agreed to furnish a band, all shows, acts and paid attractions; also poster paper, ticket boxes, ticket sellers, and tickets; also agreed to provide a promoter one week in advance of the show. The Indiana Board of Agriculture agreed to furnish appellant a suitable location for the show upon the State Fair Grounds, all licenses and taxes required by law to operate said shows and concessions, water, electric lights, ticket takers and police protection. Appellant was to pay the Board of Agriculture thirty per cent. of the gross receipts, settlement to be made at the end of

each day's business. One of the attractions or shows given by appellant pursuant to its contract with the board of agriculture was the show of Peejay Ringens. In March, 1923, Peejay Ringens and appellant entered into a contract in writing whereby Peejay Ringens agreed to associate himself with appellant for the season of 1923 and to play all territory in the United States and Canada contracted for by appellant and to show only under the supervision of appellant and to furnish his show complete, with the exception of the wagon front, which was to be provided by appellant. Peejay Ringens agreed to abide by and conform with all the rules and regulations governing appellant. Ringens was to pay appellant fifty per cent. of the gross receipts, settlement to be made at the close of the business each day. Appellant further agreed to furnish location for the shows of said Ringens, all licenses required by law, tickets and ticket takers and to haul all paraphernalia of Ringens to and from the car, used in and around the show. Ringens was to hire, manage and pay all salaries to all parties connected with his show. Ringens agreed to protect appellant and save it harmless from any and all lawsuits and damages that might arise from the injury of any spectator or persons attending any of the exhibitions given by the said Ringens. The appellant, pursuant to its contract with the Indiana Board of Agriculture, brought its aggregation of shows to the State Fair Grounds, and one of said shows was that of Ringens, which occupied a place on the State Fair Grounds designated by appellant and called "Midway." All of the attractions and shows of appellant, including the show of Ringens, were constructed and made ready under the general supervision of the superintendent of construction in the employ of appellant. Appellant's construction superintendent inspected all shows to see that the seats were properly constructed. He also inspected

the show of said Ringens each day. He had authority, when he found anything wrong, to correct the same, and his opinion and judgment controlled. On the day of the injury to appellant, he inspected the seats of Ringens about twelve o'clock and found water standing on the ground near and about the jacks which supported the seats to a depth of about five inches. He found some of the blocks under the jacks loose and replaced them himself and gave directions to two men in the employ of Ringens to watch the water and see that the blocks did not wash out. The collapse of the seats which caused the injury to appellee was brought about by the water loosening the blocks supporting the jacks and thus, in turn, the jacks moved out of place and permitted the whole seating arrangement to fall. The evidence also tends to prove that appellant, through its agents, adjusted all matters with all of its attractions, including Ringens, such as where the tickets were sold to persons who did not get to a show or where clothing was damaged.

Appellant's counsel, in his brief, says "we here and now admit the liability of P. J. Ringens to appellee." In other words, the negligent construction of the bleacher seats and the collapse thereof causing injury to appellee need not be discussed.

It was the duty of appellant to use reasonable care to see that the bleacher seats in all of its shows, including that of Ringens, were so constructed and maintained as not to risk doing injury to anyone attending the aggregation of shows which appellant was exhibiting pursuant to its contract with the Indiana State Board of Agriculture. *Conradt* v. *Clauve* (1884), 93 Ind. 476, 47 Am. Rep. 388; *Plaskett* v. *Benton-Warren, etc., Soc.* (1909), 45 Ind. App. 358, 89 N. E. 968; *Scott* v. *University of Michigan Athletic Assn.* (1908), 132 Mich. 684, 116 N. W. 624, 17 L. R. A. (N. S.) 234; *Carlin* v.

*Smith* (1925), 148 Md. 524, 130 Atl. 340, 44 A. L. R. 193, 204; *Texas State Fair* v. *Brittain* (1902), 118 Fed. 713, 56 C. C. A. 499.

The appellant retained the general supervision and control over the side show called Ringens, participated in the receipts, made daily examination of the bleacher seats in said sideshow, and had the authority to cause any changes to be made in the construction of the same it deemed necessary, and it cannot be relieved of its duty to exercise reasonable care to have and keep the premises reasonably safe to all persons invited to said show on the ground that Ringens occupied to it the relation of an independent contractor. *Turgeon* v. *Connecticut Co.* (1911), 84 Conn. 538, 80 Atl. 714; *Adams* v. *Schneider* (1919), 71 Ind. App. 249, 124 N. E. 718; *Wodnik* v. *Luna Park Amusement Co.* (1912), 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070; *Hartman* v. *State Fair Assn.* (1915), 134 Tenn. 149, 183 S. W. 733, Ann. Cas. 1917D 931; *Babicz* v. *Riverview Park Co.* (1912), 256 Ill. 24, 99 N. E. 860.

In the case of *Adams* v. *Schneider, supra,* the court said: "It is a fundamental principle that one who owns or controls a place of public entertainment is charged with the affirmative, positive obligation to know that such place is safe for public use, and he impliedly warrants such place to be safe for the purpose for which it is designed. He is required to use care and diligence to keep the place safe for those in attendance and, failing to do so, he may be held liable for injuries occasioned by his neglect. His want of knowledge of defective conditions which by the exercise of reasonable care he might have discovered will not excuse him, nor will the fact that an independent contractor intervened in the preparation for or conduct of the entertainment. Those who accept the invitation to attend and who have paid the admission fee have a right to assume that a safe

place has been prepared for them and it is not to be expected of them that they make an inspection of the surroundings for the purpose of determining whether or not they are safe."

The principle of law as announced by this court quoted above, although often applied in a case where an association conducting a fair is held liable to its patrons for an injury occasioned by a defect in the apparatus employed by a concessionary, applies with equal force to a general concessionary "who himself sublets privileges to sub-concessionaries taking as compensation a percentage of the gross receipts of the latter," where, as in this case, appellant retained the general supervision and control of all its shows, including Ringens, exercising such control in the manner as hereinbefore set forth.

In the case of *Hartman* v. *State Fair Assn., supra*, the court said: "Kennedy, as concessionary, held the sole right or exclusive privilege of bringing and operating amusements on the fairgrounds. We think it cannot be maintained, in any event, that his *status* as regards liability was higher than that of the usual fair association which, as the owner of exhibition grounds, grants a concession directly to the operator of such amusement."

The jury, by its verdict, found that appellant had control and supervision of the show in which appellee was interested, and that appellant had failed to use reasonable care to keep the premises in a safe condition; there being evidence on each of the above propositions, this court will not disturb the verdict of the jury.

Appellant says that the court erred in refusing to give instructions Nos. 1, 2 and 3 tendered by appellant. Each of said instructions proceeds upon the theory that the contract entered into by and between appellant and Ringens created the relation of an

independent contractor, and consequently appellant is not liable. Applying the doctrine in cases heretofore cited, we hold that, under the evidence in this case, appellant cannot relieve itself of liability on the theory that Ringens was an independent contractor. See *Turgeon* v. *Connecticut Co., supra; Hollis* v. *Merchants Association* (1907), 205 Mo. 508, 103 S. W. 32, 14 L. R. A. (N. S.) 284; *Thornton* v. *Maine State Agricultural Soc.* (1902), 97 Me. 108, 53 Atl. 978.

Appellant also contends that the court erred in giving instruction No. 12. The court in this instruction told the jury that certain facts brought about the relationship of an independent contractor and certain other facts constituted the relationship of master and servant. Whether the instruction is subject to criticism is immaterial. The appellant was not harmed in the giving of said instruction. The evidence in this cause shows that appellant had such control over the Ringens show as to make it liable to appellee.

The cause was fairly tried and determined in the court below. Judgment affirmed.