EIDE, by Guardian *ad litem,* Respondent, vs. SKERBECK and others, Appellants. [Two cases.]

*February 9—March 9, 1943.*

For the appellants there was a brief by *Lehner & Lehner*, and *Adolph P. Lehner,* all of Oconto Falls, and *Rush, Devos & Skroch* and *A. L. Devos,* all of Neillsville, and oral argument by *Adolph P. Lehner*.

*Frank E. Hebert* of Tomahawk, for the respondent.

FOWLER, J.   As appears from the foregoing statement, the actions were brought by an infant and her father to recover their respective damages sustained as a result of the daughter's falling over a tent stake alleged to have been negligently placed by defendants Joseph and Eugene W. Skerbeck. The defendants claim that the findings of the jury, which are set forth in the statement preceding the opinion, are not supported by the evidence.   These findings are numbered in the preceding statement from (1) to (7).   Finding (1) is so plainly so supported, and findings (4) and (7) are so plainly supported if findings (2) and (3) are sustained by the evidence, that we shall not particularly discuss the defendants' contentions respecting findings (1), (4), and (7).

As to finding (2), the complaint by its paragraph 3 alleges "that the defendants, Joseph Skerbeck and Eugene W. Skerbeck . . . carry on a business of staging carnivals . . . under the firm name and title of Skerbeck Amusement Company and as the Northern Carnival Company."   The answer of the defendants expressly admits this allegation.   Defend-

ants expressly allege by paragraph (5) of their answer that they "conducted a carnival on the premises in question, and that they set up the tents in the usual manner with stakes and ropes extending from the tent to the stakes, and that all of such were skilfully placed and as is usual in such cases."

Under the law applicable to amusement companies, as hereinafter more particularly stated, under the admissions and allegations of the answer above stated we consider that question (2) was correctly answered as matter of law so far as the setting of the stakes at the bingo tent is concerned, and it is immaterial whether defendants had "control and supervision of the bingo tent" in any other respect.

As to question (3) set out in the statement of facts, the defendants' liability resting upon the proposition of law next above referred to, it was the duty of defendants, under the admission and allegation of their answer above stated, to maintain the grounds on which the carnival was conducted in a reasonably safe condition. The question thus is one of maintenance. The ground of negligence in this respect alleged in the complaint is that it was "defendants' duty to use reasonable care to see that the premises were kept safe," and that they "violated this duty by negligently driving the tent stakes in grass so as to conceal them from view," and "negligently removed the tent ropes leaving the stakes concealed." Under these allegations of negligence which were denied by the answer, question (3) is directed to the condition of the bingo tent stake as to being concealed by grass, and whether a tent rope was connected with the stake where plaintiff was injured. It is undisputed that while the public was attending the carnival no ropes were attached to the bingo tent, and that such was the case during the night when plaintiff received her injury up to the time the storm came on, and that at this time the concessionaire of the bingo tent began fastening the tent by use of stakes and ropes to protect it and its contents from injury by the storm. That a rope was not attached to the

stake where plaintiff was injured at the time of her injury in the immediate situation became immaterial, except as absence of a rope may bear upon concealment of the stake by grass. Thus the only fact to be determined under question (3) is whether the stake was concealed by grass. The evidence tending to prove such concealment of the stake is as follows:

Jean, a friend of Rita, the injured girl, who was walking ahead of Rita, testified: "The grass covered the stake." A deputy sheriff, who came back to the grounds after taking Rita to a doctor and looked around, testified that there was grass around eight or ten inches high, about the same height as the stakes on both sides of the tent. The chief of police who looked around the tent next morning with Rita's father testified: "There was grass there the same height as the stakes." The commander of the American Legion Post that sponsored the carnival said that "Mr. Skerbeck bawled [him] me out the first night for the grass not being cut. There was high grass throughout the whole ground. It was not cut before the carnival came or while the carnival was there." This witness further testified that "the crowd tramped down the grass" the first and second nights and that after the first night "where the people walked the grass was just as flat as the floor" of the courtroom "all through the midway," and there is testimony of other witnesses that there was no grass standing anywhere in the midway. But we consider that the testimony first stated raised a question for the jury as to concealment of the stake by grass and the jury's answer to question (3) must be sustained.

This brings us to the point of discussing the law applicable to the case. It is unquestionably the law that it is the duty of persons conducting places of amusement to use ordinary or reasonable care to keep them safe for the public. This rule is recognized by this court in *Emerson v. Riverview Rink & Ballroom,* 233 Wis. 595, 290 N. W. 129; *Phillips v. Wiscon-*

*sin State Agricultural Society,* 60 Wis. 401, 19 N. W. 377. A multitude of cases to this effect are referred to and stated in notes in 22 A. L. R. 647; 29 A. L. R. 29; 44 A. L. R. 203; 53 A. L. R. 847. This rule covers the grounds on which circuses and carnivals are held. *Easler v. Downie Amusement Co.* 125 Me. 334, 335, 133 Atl. 905, 53 A. L. R. 847, holds that a circus company "having invited the public to its circus grounds was chargeable with the duty of using reasonable care, not only to see that the premises which it occupied were in a reasonably safe condition, but also that they were kept so." Of like effect is *Rubin & Cherry Shows, Inc., v. Dinsmore,* 88 Ind. App. 616, 164 N. E. 304. The defendants claim that the duty to place the tent stake rested with the concessionaire operating the bingo game, who was an independent contractor, and the defendants are not liable, under the doctrine of *respondeat superior,* for negligence of the concessionaire or her employees, but only for the acts of negligence of their own employees. This may be so as between the defendants and the concessionaire. But it is not so as between the defendants and the public whom it has invited to the grounds occupied by the carnival's attractions. The defendants' duty was to use ordinary care to keep the grounds to which they invited the public safe for the attending public, and that duty, was not delegable. In the *Dinsmore Case, supra,* the place of injury of a patron was inside the tent of a concessionaire, and the cause of the injury was insecure placing of a support of a row of seats occupied by patrons to view the performance. That the concessionaire was an independent contractor was held not to relieve the exhibitor of the carnival. There as here the operator of the carnival received a percentage of the receipts of the concessionaire. Wherever an owner or operator of a place of amusement leaves to an independent contractor the performance of a duty which under the law he is obligated to perform himself, he is liable for the result of a negligent act of a servant of the independent contractor to

the same extent as if the negligent act had been done by a servant directly in his employ.

The defendants also contend that the concessionaire is in the situation of a lessee of the defendants and the rule is that as to the public a landlord is not responsible for a condition caused by negligence of the tenant. However this may be as between a typical case of landlord and tenant, it does not apply to the instant case where the defendants by their answer admit they as the "Skerbeck Amusement Company and the Northern Carnival Company" were conducting a carnival to which the evidence is undisputed that they as the "Skerbeck Amusement Company and Northern Carnival Company" by advertisements invited the public to attend.

From the above it follows that the judgment must be affirmed as to defendants Joseph and Eugene W. Skerbeck.

As to the judgment defendant Mrs. Joseph Skerbeck, however, the judgment must be reversed. Mrs. Skerbeck was not named as a party in the original summons and complaint, and neither summons nor complaint was ever served upon her. After the verdict of the jury was returned, the court without notice to Mrs. Skerbeck entered an order peremptorily purporting to amend the summons and complaint to include her as a party defendant. Neither a purported amended summons nor complaint was served upon Mrs. Skerbeck. Upon the order so purporting judgment was entered against Mrs. Skerbeck adjudging her jointly and severally liable with the two original defendants. Plainly by the entry of the judgment against her Mrs. Skerbeck was denied due process and under the Fourteenth amendment to the United States constitution the judgment and order are void as to her. *Pinney v. Providence Loan & Investment Co.* 106 Wis. 396, 82 N. W. 308. Jurisdiction of the person can only be acquired by service of a summons in the manner prescribed for personal service. This is plain and fundamental, even where motion to make one a party or order to show cause why one should not be made a

party is personally served. *In re Citizens State Bank of Gillette,* 207 Wis. 434, 241 N. W. 339; *State ex rel. Ashley v. Circuit Court,* 219 Wis. 38, 261 N. W. 737.

The court made the void order on the theory that sec. 260.21 (3), Stats., which reads as follows, authorizes it:

"(3) In an action against a partnership, where the names of the partners are unknown to the plaintiff, all proceedings may be in the partnership name until the names of the partners are ascertained, whereupon the process, pleadings and all proceedings shall be amended by order directing the insertion of such names."

The statute does not apply because the persons in giving the shows did not constitute a partnership. They were at most under the evidence only joint adventurers. The original summons and complaint ran against the defendants Joseph and Eugene W. Skerbeck by name and not against the "Skerbeck Amusement Company and the Northern Carnival Company." Neither summons nor complaint allege a partnership nor suggest that the names of the persons constituting the named companies are not known. The order does not purport to be based upon anything but the fact that Mr. Lehner, who was not the attorney of Mrs. Skerbeck, but the attorney of the defendants Joseph and Eugene W. Skerbeck, the named defendants, stated in a brief filed in support of the motion of the said defendants after verdict, that "defendants are father and son. Mrs. Skerbeck is the owner of the carnival operating under the name of Skerbeck Amusement Company and Northern Carnival Company." Aside from the manifest want of authority of Mr. Lehner to bind Mrs. Skerbeck by statements made in arguing to the jury the case of the two defendants, the statement is not that she is a member of a partnership owning the shows but that she is the sole owner thereof.

*By the Court.*—The judgments of the circuit court are affirmed as to the judgment defendants, Joseph and Eugene W.

Skerbeck with one bill of costs taxed against said defendants. The judgments against the judgment defendant Mrs. Joseph Skerbeck are reversed, with one bill of costs taxed against both plaintiffs, but to be collected from one only.